Good morning, Your Honors. May it please the Court. My name is Anna Benvenu. I represent Plaintiff Appellant Sulaiman Dosouqi. Today the Court is considering a District Court decision that the indefinite delay in the adjudication of Mr. Dosouqi's adjustment or green card application is not unreasonable. And the standard of review you're looking at is a de novo standard. So you're applying the indisputed fact that his application has been pending since July 2009 to the track factors and considering whether or not it's reasonable. Before? I'm sorry. Go ahead. I just wondered if you could articulate what your understanding is of the reason why the application has not been acted upon. It seems from the submissions at the District Court level that USCIS is alleging that Mr. Dosouqi's barred as being inadmissible for providing material support to an undesignated terrorist organization. That was not their position in 2008 when USCIS granted his wife's I-730 position, but petition, I'm sorry. But in 2009, one year later, they made that their position. His current status is he's an asylee? That's correct, yes. Before we get to the track factors, I'm struggling a little bit with what our authority is here. And in 2004, the Supreme Court decided that Norton v. Suha case, and that seemed to change some of our pre-Norton case law, because Norton says that essentially a claim of unreasonable delay can only be brought against an agency for actions that the agency is legally obligated to take. And so we would have to determine that the agency failed to take a discrete agency action that it is required to take. And based on my review of the briefs, the only requirement here that in order to find a discrete agency action, you're pointing just to the APA Section 555B, which is a very general, broad sort of statement. Does any other case say that that would meet the Norton v. Suha standard for being a discrete, a failure to take a discrete agency action that's legally required to take for purposes of Norton? I mean, I think it's undisputed that the agency must be a case. Is there a case? Is there a case? That's what I was seeking for. Some case saying we can say under Norton v. Suha that if an agency doesn't act in a reasonable period of time on a matter before it, then APA Section 555B says that's a discrete agency action that the agency is legally required to take. I'm just, I'm having trouble reading that into 555B, so I was looking for other cases perhaps in other circuits. I'm not sure, Your Honor, if there is one applying Norton. Okay. So you're not aware of one, because I didn't find one. No. But I do think that both parties agree that the agency has some duty to adjudicate the decision or the application. Well, there's a difference between the pace of adjudication and adjudication. Sure. It seems relatively clear that if the agency just says we're not going to adjudicate, you know, we're given discretion, we're just not going to do it. We're never going to look at this application that an APA-based claim could be brought. The question I have on the jurisdiction we have is whether or not we have jurisdiction over the pace of the adjudication. Right. And I understand, I do understand your point, and I think, I think the APA is what gives you that jurisdiction. And that's just 555B. You're saying that the language that it says, with due regard for the convenience and necessity of the parties or their representatives and with a reasonable time, each agency shall proceed to conclude a matter presented to it. And that imposes on the agency a mandatory duty, a discreet legal duty, to conclude the application before a reasonable period of time. I just want to make sure I'm understanding that's your argument. Yeah, that's correct. Okay. And there's no case. This would be a case of first impression nationwide. I hesitate to say that because I feel like there are a number of cases that apply, I mean, at the district court level certainly. But at the circuit level. Yeah, and the circuit court level is pretty absent on these cases in general. And I spent enough time. So if we agreed with that, if we had a case holding that, that would mean, that would basically undo Norton v. SUA because we would say any agent, we apply to any agency who delayed in any decision before it, that we would have the authority to order it to take action. I don't see any other way to read the APA. I mean, what else would the purpose of that provision of the APA be other than to say that agencies do at some point have a duty to act, they can't just sit indefinitely on that? How about like in the immigration context, now we have all these executive determinations about discretion and not moving forward with removals or making these determinations. Wouldn't the same rule apply there so that a court would have authority to say, DHS, you're not taking these steps within a reasonable period of time. You need to go forward with enforcing immigration law. Yeah. I mean, arguably, I mean, that could definitely be a position that you could take. I think that making the decision to not enforce, making a decision to not make a decision isn't a decision. Okay. Well, you're not suggesting that there's a backlog. No. That someone can reach in and say, now you have to decide this case. No. And there isn't a backlog. So there's a policy decision, right? A policy not to decide where there's a potential that an organization could be deemed to be an exception. So don't we have that also, like, in the immigration context, where we have an executive order policy, not really an executive order, but a policy saying don't enforce, don't decide, don't move forward. And would that then give courts the authority to say, you know, assuming someone had standing like in Texas coming in saying, you know, we're affected by this lack of action financially. So the Fifth Circuit then could say, right, and under 555B we can order you, agency, to proceed. Well, the distinction here is you have an asylee, an individual who's been granted the indefinite right to remain in the United States, who's then, who's statutorily eligible to apply for a benefit, has applied for that benefit, has paid the fee, has met all the requirements, and that application is just hanging out for years and years. And that's, we're not saying you have to grant, CIS, you must grant. We're saying you must issue some decision. And I'm just asking, what's our authority to do it? You're pointing to 555E, and I'm saying that applies across the board to every agency and every context. Well, I'm saying it applies to this context. I'm saying that in this context. Right, but we have to decide what the effect of our ruling is. Certainly. And I think it's quite distinct from the situation you're pointing out in Texas, because you're talking about an individual who has a due process right to be here in the country and has that right, Congress provided a right to apply for a benefit. And so that individual has, he's paid for, to apply for a benefit. He's taken a medical exam. He's complied with all the requirements and he's entitled to a decision on that application at some point in the future. And whether that be in one year or six years or 20 years or a hundred years, and at some point the agency needs to issue a decision. And so I think the question before you and the question that's not clear for district courts is exactly what amount of time. But that's only after we get past the determination that we have authority to order the agency to act in this context. Now, if we determine we do have the authority, whether under 555B or otherwise, then we get into the track question about what's the track factors and to determine what's a reasonable amount of time. Yes. In this court, Patel v. Reno, it's a pretty old case, not that old I guess, but from 1997. And in that case, this Court ordered that an I-130 visa petition that had been delayed for a number of years be adjudicated. We have a lot of pre-Norton cases that are exactly where you want them to be. But we don't have any post-Norton cases, and at least I didn't see any cited in your briefs. Either way, it seems. Let me ask and put it in sort of a different manner of asking maybe the same questions. When I look at the jurisdiction stripping provision in 1252, it talks about courts having no jurisdiction to review a decision or action of the appropriate agency, the authority for which is specified under this subchapter to be in the discretion of that agency.  Okay. The agency has the discretion to adjust someone's status. Sure. So why is the pace of the adjudication process not fall within that discretion? I understand you could argue, it seems to me at least, you could certainly argue where the agency is now is the functional equivalent of saying we're not going to adjudge it at all. And then they're not exercising their discretion at all, you would argue. But as I understand this case, it's really about pace, what was before the district court. It's taking too long. And so why does not pace of adjudication fall within the discretion if Congress has given broad discretion in the first instance to the attorney general to have the discretion to determine the adjustment of that status? Yeah. I mean, I get it. Then the distinction is important. You have, CIS has the discretion to deny. And in fact, there's such a thing as a discretionary deny. Like yes, you meet the requirements. Yes, you've been an asylee for one year. Yes, you're not barred. But we think that you're not a good person because you have been arrested for 12 DUIs. And even though you don't have a single conviction, that doesn't make you ineligible statutorily. We just don't think you deserve to be a green card holder. And we're going to exercise our discretion to deny that application on that basis. That would not be appealable to you pursuant to the jurisdiction stripping legislation. So there wouldn't be a way to appeal a discretionary denial. And in fact, it's a huge problem for our clients who get denied in the exercise of a judge's discretion. So my question is, why is the pace of adjudication not followed in that bar? Right. And I think that it doesn't because this – it's not – agencies don't have the discretion to choose not to issue a decision. Well, you're saying – But that's different. That's different. That's maybe the functional equivalent of saying we're not going to adjudicate. And I'm not saying you wouldn't have a right to go forward and make that argument, that they're refusing to exercise their discretion to adjudicate at all, versus in this case the argument was you're too slow. Not that you're not doing it at all. You're too slow at doing it. But the problem is in this case there isn't anything happening. Well, so opposing counsel says in this jurisdiction stripping section 1252 that it refers to any other decision or action of the Attorney General, which presumably includes non-action of the Attorney General, is within the framework of this discretion that we lack jurisdiction to review. Yeah. The government's argument is that the choice to be inactive is an action. And, I mean, it's a fun lawyer game. I get it. Like, semantically, like that – Well, don't we do that in the APA? We say final agency action, and then it also includes actions unreasonably delayed or denied. So presumably we would read action the same way here and say it would include non-action, and the Congress has determined that it would strip our discretion or strip our jurisdiction to consider those sorts of arguments. No. I think inaction, whether it is deliberate inaction or just simple inaction because you're busy, is still inaction. It's – it doesn't matter whether you're choosing to be inactive or not. You're not making a decision. Do you want – So your position is that if they're just busy, we can still – that somebody can still reach in and say you – and file an action to compel them to decide it? I think it is distinct, and in this case that's not the situation. But I do think eventually, you know, if it's been 30 years and we're just so busy we can't adjudicate anything, I mean, I think at some point, yeah, the APA requires CIS to take action whether the inaction is deliberate or not deliberate. I'll reserve the rest of my time. Thank you.  May it please the Court, Ari Nazaroff on behalf of the Attorney General. The district court got it right in this case. A holding of less than four years given the consultative multi-agency process involved is not unreasonable. So you agree, then, that we have the authority to make that determination as to whether the delay was reasonable or unreasonable? So you would agree with opposing counsel that under 555B, that's sufficient discreet, legal, mandated agency action that we can say, agency, you didn't comply with that? That's my concern, is how we get the authority to send an order to the agency. Well, I think the issue – you do get to decide whether this is a reasonable delay. A jurisdiction is not an issue. It's not an issue that others, yeah. Okay. I'm not talking about jurisdiction. So you're agreeing that we're not stripped of jurisdiction under 1252A2B2? Jurisdiction is not before this Court. We did not brief it. They did not brief it. Our argument is that the district court judge correctly found, and this is the only issue that's before this Court, that a delay, a holding of less than four years is reasonable. In fact, no other court, district or circuit court, has found that a holding of less than four years is unreasonable. Now, Petitioners argued this morning that the agency is just sitting on these cases. And they've argued in their brief that this is a sham, a scam, not to make a decision on the case. That is not correct. The terrorism statute was very broadly worded. So Congress allowed for these exemptions in the CAA 2008. And the agency are working on these exemptions. Now, there are three agencies, the Attorney General, DHS, and the Department of State. Can I get back to the jurisdiction stripping statute for a moment? Because obviously you can't waive jurisdiction. We have to determine whether we have jurisdiction or not. Whether you briefed it or not, we still need to make that determination. So getting back to Judge Seabright's question, do you agree with opposing counsel that 1252a2b2 doesn't strip us of jurisdiction to make a determination as to the pace of a decision? I think that argument, I would just like to brief, that goes towards the actual adjudication of the adjustment. We're not there yet. But as far as the adjudication of the adjustment, I would say that depends. If it's a discretionary decision by the agency, then there is no review in this case. If it is not a discretionary decision, if they look at the merits of the statute, the material support, this Court might have jurisdiction. Okay. Well, here we have a policy decision by the agency to delay making a decision until they've had time to work through possible exemptions. So how do we read that in light of 1252a2b2? Well, again, Your Honor, I would say that that's not an issue before this Court. Jurisdiction wasn't brief. It wasn't brief. But we have to consider it. There actually is some case law in other circuits that says if it's statutory jurisdiction, you can sort of bypass it if it's too thorny. I don't know, I don't think this circuit has ever held that. But let's assume for a minute that we do have to consider it. I'm a little confused as to why you haven't raised it. We all agree that if there had been a discretionary determination of the application, that we would not have jurisdiction? If there's been a discretionary denial of the adjustment. But that's not the issue. The issue is the pace. I'm just trying to clarify what we're talking about here. We all agree that that would be a discretionary determination that would not be reviewable. That's correct. That's correct. Now, the issue here is whether or not the agency has been unreasonable in not taking a discrete act that is, as you see it, that is to decide the application. Within the context of the exemption process. That's right. And you say that we do have jurisdiction to decide that issue. Well, I believe you could apply the track factors. Track factors. And decide whether this is reasonable or not. That would be our position. We did not brief the jury. And if the contention were that you're just being too slow, that you've got a backlog and we want you to decide this one, what would your position be? Well, we're not being too slow. No, no, no. I mean, if that were the claim, would we have jurisdiction to decide? Well, again, that would go towards the track factor and the reasonableness of this. You know, you're missing, though, what a lot of district courts have helped. And I don't really understand why you aren't making an argument that we're all telling you may be on the table. And so help me here. I mean, Judge Bates in Besher, B-E-S-H-I-R versus Holder, a very thoughtful district court decision saying that what I'm referring to in Judge Acuta is the pace of adjudication is discretionary. It's not the denial of the application. It's the inability or unwillingness to get to it in the time period the applicant wants. And so if this is, if this case, and it seems to me the challenge is about the pace of adjudication. That's correct. Why is that not discretionary? Well, are you saying it's not discretionary and your agency has to comply with the APA requirements? Well, again, Your Honor, if you give it to us, if you find that that is discretionary, that would be in our favor. We did not brief that issue. Other times we briefed it. Ershad v. Johnson in the Eighth Circuit went to the track factors, found that a 14-year delay was real. But they also said we're going to skip the jurisdictional question. That's one of the circuits that says we'll skip thorny statutory as opposed to Article III sort of jurisdictional questions. So they didn't totally ignore the jurisdictional question. They just said we're going to bypass it. And the First Circuit has said the same thing in immigration context. Well, Your Honor, I would agree with you if you find that there's no jurisdiction to review, but it's not discretionary. You'll win anyway you can. I would argue that in this case, though, I think it's important to put it in the context of what's going on. Well, what the district court said was that it cited a northern district case, Lou v. Chertoff, and said that that court concluded that the U.S. CIS has a mandatory non-discretionary duty to adjudicate a petition for adjustment of status within a reasonable time. While the actual decision on the adjustment application is discretionary and therefore unreviewable, which is what we have just been talking about, the pace of doing so is not committed to agency discretion. So you agree with that? Your Honor, I'm not taking a judge. They do have a duty. The jurisdiction is not before this Court. Yeah. Okay. So they do have a duty to decide within a reasonable time. I think you can apply the track factors. And that means that we apply the track factors. We briefed the track factors. We briefed the reasonableness of the time and the pace. So you're suggesting that we should do like the Court did in Ershad and just assume even if we have jurisdiction. I don't know that we in the Ninth Circuit can assume jurisdiction, since the Supreme Court has told us not to assume jurisdiction. But you would like us to say even assuming we have jurisdiction, your opposing counsel loses because track factors. Is that your position? That's correct. Even if you have jurisdiction, the track factors. In this case, again, no court and the Petitioner has not cited to any case that shows that a four-year, less than four-year delay is unreasonable. I assume you don't have a case that says the Ninth Circuit will assume jurisdiction in this context. I don't. I don't, Your Honor. Okay. Suppose that we say, we agree with you and say the four years, which is the issue before the, which is what the situation was before the district court. Four years. Less than four years, Your Honor. Less than four years. Now, we're down the road a bit here by, what, two years? Can they file another action in two more years if there still has not been an adjudication? If we've got eight years? Well, the only issue before this Court is the less than four years. I'm just asking the government's position. Sure. It was denied in the district court without prejudice, so they could file another action. I don't see, I don't see what would prevent them from filing. Would you explain to me the government's reason for not adjudicating this? Well, it's been put on the shelf why these exemptions have been written by the agencies. And I just want to point out to you, Your Honor, that just recently I'm. What does that mean? I'm not, what is the agency doing? Well, it's three agencies, actually. They're consulting. And what is happening, right now he would be inadmissible, ineligible, because he, because he had some involvement with the PLO. He would have been denied. Congress allowed the agencies to write exemptions. So duress is one example. If you were under duress and you supported a terrorist organization, well, that allows you to be exempt from that. And that's doing the right thing, Your Honor. The government is doing the right thing, but it has to. Exempt from the BETT bar. The terrorism bar, that's right. Support to terrorist organizations. Organizations. And in fact, Your Honor, just last month, the agency issued two new exemptions, limited material support and insignificant material support. But if the agency now decided, Mr. DeSuke's petition and said, deny, but you can reapply, what difference does that make? I mean, so then he can reapply. And I think in your brief you said, we probably will deny him if he applies now, but we would give him the opportunity to reapply. So why shouldn't you, why shouldn't the agency just make the decision now, based on the application before it and the lack of an exemption? Well, again, the agency is trying to do the right thing. He was denied, according to the Valleca Declaration, he was denied for supporting for providing food to refugees, I believe. They indicate that that would be the reason that he would be denied. And these exemptions, this last set of exemptions last month included a humanitarian assistance. So he would, they could consider him under that. Again, the agency is doing, the agencies are doing the right thing. But if you don't deny, if the agency doesn't deny him, then he's unable to appeal that decision. So he might be unable to appeal that decision even if he's denied, if he's denied under a discretionary ground here. But how do they look at it anew? Help us with the process, I think is what we're asking. So right now he's just in this limbo. You're saying there's two new exemptions. Let's say there's a good-faith argument he could fall within one of those. Does he have to come forward with a new application? Is there somebody tracking all of these and then they'll reopen sort of the application? How is it working such that there will be a fairly and time, a fair and timely review based on these exemptions as they develop? He appears to be in the queue, Your Honor. As these exemptions come through, the agency takes those people in the queue, on hold, and evaluates each application individually. But suppose that his position is that I didn't give any aid, I don't need an exemption, I didn't support the PLO, so I want you to decide this so that I can get a review of the record and get somebody to look at my position. Well, the reason he's in this boat is because he said, I did support the PLO, and he said, I was involved. So somebody who doesn't, they would not necessarily be in this queue. Well, he can raise the argument that the PLO isn't a Tier 3 terrorist organization. That clearly would be reviewable because it's a question of law. He technically could, Your Honor, but again, this was not raised. They've waived that issue. But in reviewing the track factors, we need to determine, you know, going through the various issues, what the prejudice would be and the like, and this deprives him of his ability to get review of the specific determination and to get out of limbo. Not necessarily, again. If he's denied based on discretion, as a matter of discretion, he gets no review. I would just like to talk about the harm. The harm is immediate risk of deportation. It's almost never the case that you can't get review in the Ninth Circuit, right? Of discretion. Are you familiar with our case law? Well, the discretion. That's right, Your Honor. Yes. But I'd just like to say that the cases that have looked at the harm, there's really not that level of significant harm here. He's arguing that he can't go back to the country that he came from and sought and bring back his extensive family. So that's not really the harm that's envisioned by district court judges. I'm not sure I understand that. Well, they have argued that the harm to him is that he can't bring his extensive family, Your Honor. By not having the adjustment. Yes. If he even gets the adjustment. Our argument is, looking at the big picture, the government has to get this right. It wants to be fair. It wants to have these exemptions for duress and significant material support. But at the same time, it has to get it right. It can't let people in that are going to do bad things in the United States. So. In evaluating the track factor, since it's on summary judgment before the district court, are we looking for a genuine issue material fact that he could succeed on the track factors? Or how, given that this is a summary judgment or denial. The only issue before this case, Your Honor, is whether the district court judge correctly found that less than, to be on hold less than 4 years, given the facts in this case, is reasonable or unreasonable. But isn't it a mixed, I mean, it's not just a question of law, right? It involves looking at the facts. And we're on summary judgment. Well, Your Honor, I don't believe there's a dispute as to the facts. He has supported the PLO. They're not disputing that. But you were just arguing about his family and whether that was the main human health and welfare issue at stake. Well, we agree that, you know, he can't bring his extensive family, being in the status he is now. There's no disputed factual issue. At this point, no. Okay. But the weight of that within the national picture of granting these exemptions, that's what those facts go into the scale of weight and the scale tells us the government. Okay. Well, we've taken you over your argument time. Thank you for your argument. Thank you. Many issues. But I guess the one I'd like to address now is this idea that it's four years, a review of four years. It's an undisputed fact that it's been six years. Well, but we're reviewing what the district court, we don't look at the district court's decision. Well, I think you have to, because it's been, it's been six years. It's, well, the district court evaluated it at four. It's now been six, and that is a fact. But how can we reverse the summary judgment order if the district court, if we find the district court was correct at the four-year period, you're suggesting we reverse and say, although you were correct, we now think you're wrong. Yeah. Is there any, is there any support you have for that? Well, he just said you could file another action. Sure. We can file another action. We could have another one going on right now simultaneously, I suppose, you know, at a different point in time. And in that Votel v. Reno case, at the district court point, it was six years, and the Ninth Circuit evaluated it saying it's been eight years, because it just has been eight years. And while the district court could have been right that four wasn't enough, now it's been six. So I think this court either has to remand and say, look at it again, because now it's been six, or it's been six and that's too long. But what is your authority if we agree, if we uphold the district court, if we get to the confined jurisdiction or bypass jurisdiction and we affirm the district court based on four years? Yeah. Do we issue opinions like that, affirm and remand? I mean, I don't know. But we would have to refine. We have nothing to review with respect to six years. Well, in Votel v. Reno, the Ninth Circuit took kind of notice of the passage of time. We can take, even if we take notice of it, I mean, obviously we can, because it's without doubt that two additional years have passed. But on the question before us, which was the district court wrong, we have to look at what the facts are before the district court. So we are bound to say, was the district court wrong in saying under four years was an unreasonable delay? Right. But it's a de novo review. So you're doing your own review. But we look de novo at whether the district court was wrong for looking at four years. Right. But it's also what an undisputed fact is now, which is six years. Everyone agrees to that. No. You don't have a case that says that, I'm sure. Well, Votel v. Reno. You're relying on Votel v. Reno. The district court action was filed at six years and the court said eight years have passed and that's too long. And so that's the same thing here. Was that sort of dicta or was that they actually? Well, they were looking at the time that had passed and it had been eight years. Okay. I guess just, I know I'm over my time, but to the point of this discretionary or nondiscretionary review, we're seeking that decision. And whatever the decision is, if it's discretionary, we'll cross that bridge when we come to it. If it's a denial based on support of the PLO, like that's a challengeable decision and that's what my client is seeking, a challenge, a way to challenge this denial. In 2008, CIS said he wasn't inadmissible for providing support to a terrorist organization. In 2009, all of a sudden, he was inadmissible. And it's that unfairness, it's that sudden change in position that happened in one year. The CAA passed. They could have held his I-730 on hold to determine this exemption, but they didn't. They said he's not inadmissible. And then all of a sudden, they're holding this application. And it's that unfairness that he's so frustrated about. So explain, I'm sorry to, I don't want to beat a dead horse here, but what is the chain of review here? Where, if the agency denies the application, where do you go? If the agency denies the application, then we seek district court review of that denial. We challenge CIS's change in position. So you would file an action in the district court? Correct. And then maybe I'd see you guys. And then we're up to it. Thank you. I appreciate it. All right. Thank you. Okay. The case of Tasuki v. Heinauer is submitted. And we are now adjourned for the morning.
judges: Schroeder, Ikuta, Seabright